**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FICKETT TOWERS, a California non-profit corporation,<br><br>  Plaintiff,<br><br>   v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation,<br><br>  Defendant. | Case No. 2:12-cv-01299-ODW(MANx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [19] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [26]** |

## I.  INTRODUCTION

This action involves an insurance-coverage dispute arising out of Fickett Towers's termination of an employee, Julia Rodriguez, and Rodriguez's subsequent wrongful-termination suit against Fickett. Fickett had an Employment Practices Liability Insurance Policy with Philadelphia Indemnity Insurance Company for two consecutive Policy periods. Under the Policies, Philadelphia would provide coverage for claims both made by an employee and reported to Philadelphia within a particular Policy period.

Julia Rodriguez filed a complaint for wrongful termination during Fickett's second Policy period with Philadelphia, and Fickett immediately reported this claim to Fickett. Philadelphia refused coverage of this claim, contending that Fickett's failure

1  to report a demand letter Rodriguez sent to Fickett during the first Policy period bars
2  coverage for the complaint filed in the second Policy period.
3        Fickett and Philadelphia both move for summary judgment on the issue whether
4  the demand letter constituted a claim under the Policies that Fickett was required to
5  report during the first Policy period as a precondition to receipt of defense-cost
6  coverage in the wrongful-termination action filed in the second Policy period.  For the
7  reasons discussed below, the Court finds that the demand letter was not a claim under
8  the Policy.[1]

## II. FACTUAL BACKGROUND

### A. The Philadelphia Policies

Fickett Towers is a California non-profit public-benefit corporation in Van Nuys, California.[2]  Philadelphia issued two successive commercial insurance policies to Fickett containing coverage for (among other things) Employment Practices Liability.  The first Policy was effective from April 12, 2010, to April 12, 2011, and the second Policy was effective from April 12, 2011, to April 12, 2012.[3]  Aside from the Policies' effective dates, the material terms of both are identical.[4]

Both Policies' Employment Practices Liability Insurance provided coverage for defense costs related to "Claims made against the Insured during the Policy Period (or, if applicable, during the Extension Period) and reported to the Underwriter . . . for an Employment Practices Act."[5]  The Policies defined a "claim" as "any written demand for monetary or non-monetary relief" or "any judicial, civil, administrative, regulatory, or arbitration proceeding . . . [that] subjects an Insured to a binding adjudication of liability for monetary or non-monetary relief for" an Employment

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L. R. 7-15.
[2] Compl. ¶ 1.
[3] Leuin Decl. Ex. 1 (Policy No. PHSD511690); Ex. 2 (Policy No. PHSD615519).
[4] *Compare* Leuin Decl. ¶ 2 & Ex. 1 *with id.* ¶ 3 & Ex. 2.
[5] Leuin Decl. Ex. 1, at 21; Ex. 2, at 71 (Part 2.I.A); *see also* Leuin Decl. Ex. 1, at 27; Ex. 2, at 78 (defining "Loss" to include damages and defense costs).

1  Practices Act.[6] An "Employment Practices Act" is defined as (among other things)
2  any actual or alleged wrongful dismissal, discharge, or termination of employment;
3  breach of written or oral employment contract or implied employment contract;
4  violation of employment discrimination laws (including harassment); sexual or
5  workplace harassment of any kind; or employment-related retaliation.[7]

6  As a condition precedent to coverage, Fickett was required to give Philadelphia
7  written notice of any "claim" made against Fickett "as soon as practicable" during the
8  Policy period in which the claim was made or, "if applicable, during any Extension
9  Period, but, not later than 60 days after expiration of this Policy or any Extension
10  Period."[8] Thus, if an employee made a claim against Fickett during a Policy term,
11  Fickett was required to report that claim to Philadelphia as soon as practicable, but in
12  no event later than 60 days following the expiration of the Policy term in which the
13  claim was made. If Fickett did not report the claim within this time frame,
14  Philadelphia was not required to provide coverage for the claim.

### B.  The *Rodriguez* Action

On September 30, 2009, Fickett terminated Julia Rodriguez from her position as a waitress at Fickett Towers.[9] On September 21, 2010, Rodriguez filed discrimination complaints with the California Department of Fair Employment and Housing ("DFEH") against Fickett, Hans Mock (Fickett's kitchen manager), Mitch Green (an administrator), and F.E. Dickinson (Fickett's owner).[10] Each DFEH complaint indicated that Rodriguez "was sexually harassed, discriminated against and terminated after [she] protested."[11] The DFEH closed the case and issued a Notice of Case

/ / /
/ / /

---

[6] Magee Decl. Ex. 7, at 83; Ex. 8, at 126.
[7] Leuin Decl. Ex. 1, at 21–22; Ex. 2, at 71–72 (Part 2.II.A).
[8] Leuin Decl. Ex. 1, at 11; Ex. 2, at 82 (Part 8.IV.A).
[9] Dickinson Decl. ¶ 2.
[10] Magee Decl. Ex. 1.
[11] *Id.*

Closure and Right-To-Sue Notice the same day Rodriguez filed the DFEH complaints.[12]

On March 9, 2011—one month prior to the expiration of the first Philadelphia Policy period—Rodriguez's attorney, Suzanne Rand-Lewis, sent a demand letter to Fickett regarding Rodriguez. The letter initially identified Julia Rodriguez as Rand-Lewis's client and listed an October 9, 2009 "Date of Termination."[13] (Dickinson Decl. Ex. 1.) It then stated, in full:

> This office represents Julia Rodriguez in regard to a wrongful termination claim against the above entities and individuals. You are hereby placed on notice that the above entities and/or its officers, agents and employees and individuals are in violation of *California Civil Code* Sections 1770(a)(4)(5)(7)(8) and (9). Demand is hereby made for remedy of the conduct in violation of the above stated statute within thirty days.[14]

On March 24, 2011, Fickett's counsel, Maureen O'Hara, replied to Rand-Lewis as follows:

> Please be advised this office is counsel for Fickett Towers. This correspondence is in response to yours of March 9, 2011, regarding an alleged wrongful termination claim against Fickett Towers, Mitch Green, Hans Mock and F.E. Dickinson.
>
> Frankly, we are perplexed by your reference to *California Civil Code* Sections 1770(a), as we do not believe that section has any bearing on a claim for wrongful termination. Also, please advise whether Ms. Rodriguez ever filed a complaint for discrimination with the California Department of Fair Employment and Housing. If such a claim was filed, please send a copy to the attention of the undersigned.[15]

---

[12] Magee Decl. Ex. 2.
[13] Dickinson Decl. Ex. 1.
[14] *Id.*
[15] O'Hara Decl. Ex. 1.

4

O'Hara received no response to this letter,[16] and neither O'Hara nor Fickett reported Rand-Lewis's March 9 letter to Philadelphia.

On September 21, 2011—mid-way through the second Philadelphia Policy period—Rodriguez filed an action in Los Angeles Superior Court.[17] The action asserted eleven claims, including claims for wrongful termination in violation of public policy; violation of the Fair Employment Housing Act under California Government Code section 12900; and violation of the Consumer Legal Remedy Act under California Civil Code section 1770(a).[18]

On September 26, 2011, O'Hara reported the *Rodriguez* action to Philadelphia by letter and notified Philadelphia that her firm had been retained to represent Fickett in the lawsuit[19]; this was the first notice Philadelphia received regarding any claims Julia Rodriguez made against Fickett. By letter dated October 28, 2011, Philadelphia acknowledged that it had received Fickett's claim on September 27, but denied the claim under both Policies.[20] Philadelphia contended that the claim did not fall under the second Policy because Rodriguez's claim was first made on during the first Policy period on March 9, 2011, when Fickett received Rand-Lewis's demand letter.[21] Philadelphia further asserted that while Rodriguez's claim would have been covered under the first Policy period, Philadelphia would not afford coverage under that Policy because the March 9 demand letter had not been reported on or before June 12, 2011, (60 days following the expiration of the first Policy).[22]

On February 14, 2012, Fickett filed this action for declaratory relief, breach of contract, and insurance bad faith. On August 3, 2012, Fickett moved for partial summary judgment, arguing that Rand-Lewis's letter did not constitute a "claim"

---

[16] O'Hara Decl. ¶ 2.
[17] *Rodriguez v. Fickett Towers*, No. LC094934 (Cal. Super. Ct. filed Sept. 21, 2011).
[18] *Id.*
[19] O'Hara Decl. Ex. 2.
[20] Dickinson Decl. Ex 2.
[21] *Id.* at 4.
[22] *Id.*

under either Philadelphia Policy, and therefore Fickett had no duty to report the letter as a condition precedent to coverage.[23] On August 13, 2012, Philadelphia filed a cross-motion for summary judgment, essentially arguing the reverse and contending that a grant of summary judgment in its favor on this issue would preclude Fickett's remaining claims.[24] The Court turns now to the merits of these motions.

### III.   LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.*

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### IV.   DISCUSSION

Fickett received Rand-Lewis's March 9, 2011 demand letter during the first Policy term (coverage from April 12, 2010, to April 12, 2011). Under the Philadelphia Policies, Fickett was therefore required to report Rand-Lewis's letter to Philadelphia within 60 days of the termination of the first Policy period (or June 12,

---

[23] ECF No. 19.
[24] ECF No. 26.

2011) as a condition precedent to coverage, but only if the letter constituted a "claim" under the Policy. Resolution of the parties' cross-motions therefore turns solely on whether Rand-Lewis's March 9 letter constituted a "claim" under the terms of the Policies.

The Court interprets the Philadelphia Policies using "the same rules of interpretation applicable to other contracts." *Westrec Marina Management, Inc. v. Arrowood Indemnity Co.*, 163 Cal. App. 4th 1387, 1391 (2008). The word "claim" must therefore be interpreted according to ordinary and popular usage, and the plain meaning governs where the "contractual language is clear and explicit and does not involve an absurdity." *Id.* at 1392.

As they apply to the Rand-Lewis letter, the Policies defined a "claim" as "any written demand for monetary or non-monetary relief" relating to a claim for wrongful termination or other Employment Practices Act. The Philadelphia Policies do not define "demand," but the California Court of Appeal has defined a "demand" under an insurance policy as "a request for something under an assertion of right or an insistence on some course of action." *Id.* In contrast, a "mere request for an explanation, expression of dissatisfaction, or lodging of a grievance that falls short of an insistence is not a demand." *Id.* Thus, to constitute a "claim" under the Philadelphia Policies, Rand-Lewis's letter must have contained a written request for monetary or nonmonetary relief under a claim of right for wrongful termination, or at least an insistence on some course of action relating to a wrongful employment action Fickett took against Rodriguez.

The Court finds that Rand-Lewis's letter does not constitute a "claim" Fickett was required to report as a precondition for coverage because the "demand" made in the letter did not relate to an Employment Practices Act. While the letter began with the statement that Rand-Lewis's office "represent[ed] Julia Rodriguez in regard to a wrongful termination claim against" Fickett, all reference to wrongful termination ended there. Instead of proceeding to explain the circumstances of any alleged

wrongful termination, Rand-Lewis went on to place Fickett on notice that it was in violation of California Civil Code section 1770—a statue dealing only with unfair and deceptive acts or practices in the context of the sale or lease of consumer goods or services. Cal. Civ. Code § 1770(a). Rand-Lewis then made her demand: "Demand is hereby made for remedy *of the conduct in violation* of the above stated statute within thirty days" (emphasis added).

No party to this action contends that a violation of section 1770 would qualify as an Employment Practices Act covered under the Philadelphia Policies.[25] Thus, Rand-Lewis's demand that Fickett remedy *only* its conduct alleged to be in violation of section 1770 cannot constitute a claim Fickett was required to report.

Philadelphia contends that Rand-Lewis's reference in her demand letter to California Civil Code section 1770(a)—a statute Philadelphia concedes is a "consumer remedy statute"[26]—does not change the fact that "Rodriguez was making a written claim for wrongful termination, which is a wrongful employment practice, and demanding relief."[27] This argument is belied by the plain wording of Rand-Lewis's letter. The Court acknowledges that the juxtaposition of the first sentence stating Rand-Lewis's relationship to Rodriguez (i.e., representation related to a wrongful-termination claim) and the final two sentences referencing only section 1770 create ambiguity regarding the nature of Rand-Lewis's request, as section 1770 in no way relates to a claim for wrongful termination. But Rand-Lewis's demand is quite clear in its request for remedy of the conduct in violation of the "above stated *statute*." Only one statute is cited in the letter: section 1770. Thus, in the face of ambiguity, the most reasonable reading of the demand limits the demand's scope only to conduct alleged to be in violation of section 1770, regardless of any stray reference to a wrongful termination claim unsupported by any facts.

///

---

[25] Pl.'s Mot. 8; Def.'s Opp'n 14.
[26] Def.'s Mot. 17.
[27] Def.'s Mot. 14

Both parties compare Rand-Lewis's letter here with the letter at issue in *Westrec Marina Management, Inc. v. Arrowood Indemnity Co.*, 163 Cal. App. 4th 1387. In *Westrec*, an aggrieved employee filed a complaint with the DFEH alleging employment discrimination. *Id.* at 1390. The DFEH then notified the employer, Westrec, of the complaint and noted that the complaint had been immediately closed because the complainant requested an immediate right-to-sue notice.

The complainant's attorney subsequently sent a letter to Westrec stating that the attorney was representing the complainant and that the complainant "was subjected [to] constant discriminatory and demeaning treatment by male supervisors based upon her sex." *Id.* The letter continued to describe the alleged incidents of discrimination and wrongful termination, inform Westrec that the complainant had received right-to-sue letters from the DFEH, and inquire whether "Westrec would prefer to attempt to resolve or mediate this matter, or if it will be necessary to file a lawsuit and have a jury decide the outcome." *Id.*

The court in *Westrec* construed the letter "as a settlement demand seeking monetary compensation for the alleged wrongdoing," which was set out in detail in the letter. *Id.* at 1393. In coming to this conclusion, the court specifically noted that the letter informed Westrec that the complainant had been subjected to employment discrimination and wrongful termination and had received a right-to-sue notice from the DFEH. *Id.* at 1392. The letter also "clearly expressed [the complainant]'s intent to sue Westrec for employment discrimination if an appropriate settlement could not be reached." *Id.*

*Westrec* does not advance Philadelphia's position. For one thing, *Westrec* is not entirely on point, as *Westrec* considered whether a demand had been made at all; here, the Court accepts that a demand was made, but questions the demand's scope. But *Westrec* is informative here to the extent that the letter there contrasts with the letter here: Rand-Lewis's letter is clearer than the *Westrec* letter insofar as Rand-Lewis unambiguously used the word "demand" in her letter. But unlike the letter in *Westrec*,

Rand-Lewis's letter in no way described the factual circumstances underlying Rodriguez's claim. Nor did it make any reference to a DFEH complaint or a right-to-sue notice. Indeed, Rand-Lewis's letter contained no factual predicate whatsoever. The absence of these facts here only underscores the reasonableness of Fickett's understanding that Rodriguez may not be making a claim that would be covered under the Philadelphia Policies.

Rand-Lewis's subsequent action (or lack thereof) with respect to the demand letter further supports Fickett's decision not to report the claim. Rather than avoid the ambiguity in Rand-Lewis's letter, O'Hara (counsel for Fickett) attempted to clarify Rand-Lewis and Rodriguez's intent by her March 24, 2011 letter. There, O'Hara noted that Fickett was "perplexed" by Rand-Lewis's reference to section 1770, as Fickett did "not believe that section ha[d] any bearing on a claim for wrongful termination." O'Hara additionally inquired whether Rodriguez had made a DFEH complaint. Rand-Lewis failed to respond to this letter in any fashion and subsequently filed suit on September 26, 2011. Considering the phrasing of Rand-Lewis's March 9 demand and subsequent failure to follow through, it takes no stretch to conclude that Rand-Lewis's March 9 letter was not a claim Fickett had to report to Philadelphia under the Policy.

In its Opposition to Fickett's motion, Philadelphia seizes upon O'Hara's inquiry in the March 24 letter regarding any DFEH complaint Rodriguez may have filed. Philadelphia contends that this inquiry "raises a triable issue of fact as to whether [Fickett] was also aware of the DFEH Complaints filed during the 2010–2011 Policy Period."[28] In its own motion for summary judgment, Philadelphia goes further and argues that Fickett must have received the DFEH complaints—which Philadelphia contends would constitute a "written demand" seeking "non-monetary" relief[29]—

---

[28] Def.'s Opp'n 6.

[29] Philadelphia cites two non-binding cases in support of this assertion: *Specialty Food Sys., Inc. v. Reliance Ins. Co.*, 45 F. Supp. 2d 541 (D. La. 1999); *Munsch Hardt Kopf & Harr v. Executive Risk Specialty Ins. Co.*, No. 3:06-CV-01099, 2007 WL 708851 (N.D. Tex. Mar. 8, 2007).

1  because California Government Code section 12962 requires any such complaints be
2  served on the employer and because both the Notices of Case Closure and the claims
3  themselves showed Fickett addressed as a recipient.[30]

4  Philadelphia's arguments on this point are unavailing. First, O'Hara's letter
5  does nothing more than attempt to resolve the ambiguity in Rand-Lewis's letter by
6  attempting to seek additional details regarding the nature of Rodriguez's claim (likely
7  in an effort to ascertain whether Fickett should report the letter to Philadelphia as a
8  claim). This attempt at clarification does not itself convert Rand-Lewis's plain
9  demand for remedy of conduct in violation of section 1770 into a demand for remedy
10 in relation to a wrongful termination claim.

11 Second, California Government Code section 12962 only requires the DFEH to
12 serve a complaint of discrimination on an employer where the complaint is "filed for
13 investigation." Here, Rodriguez sought immediate closure of her case and issuance of
14 right-to-sue notices. The DFEH's September 21, 2010 Notices of Case Closure
15 clearly state that the "DFEH will take no further action on the complaint."[31] Thus,
16 under a plain reading of Government Code section 12962, the DFEH was not required
17 to serve Fickett with the complaints because the complaints were not filed for
18 investigation.

19 Finally, Philadelphia presents no evidence to support its contention that Fickett
20 actually received any DFEH complaints or Notices of Case Closure. While the DFEH
21 complaints themselves list Fickett's mailing address,[32] there is no indication that any
22 of these complaints were actually mailed to Fickett; rather, the mailing addresses are
23 simply part of the background information sought by the complaint form. And while
24 the last page of each Notice of Case Closure contains F.E. Dickinson (identified as
25 Fickett's owner) and Fickett's address unadorned in a footer, there is no indication
26 that the Notices were mailed to Dickinson or Fickett. To the contrary, the Notices are

---

[30] Def.'s Mot. 12–13.
[31] Magee Decl. Ex. 2.
[32] Magee Decl. Ex. 1.

1  clearly addressed only to Julia Rodriguez, and the only "cc" listed is Rodriguez's case
2  file. Further, Dickinson asserts in his declaration that "Fickett Towers did not learn of
3  [the DFEH] complaints, or of the Right to sue Notices, until Fickett Towers was
4  served with the summons and complaint in the Rodriguez Action."[33]  Philadelphia
5  therefore has failed to introduce admissible evidence countering Fickett's evidence
6  and supporting its argument that Fickett received notice of Rodriguez's DFEH
7  complaint before Rodriguez filed her complaint in state court.
8       In short, the Court concludes that when Fickett received Rand-Lewis's March 9,
9  2011 letter, it was not in receipt of a claim covered by the Policy. Contrary to
10 Philadelphia's contentions, Fickett was not required to report the March 9 letter
11 merely because it vaguely referenced a "wrongful termination claim." Rather, the
12 letter clearly demands remedy solely for conduct in violation of California Civil Code
13 section 1770, a consumer unfair-or-deceptive-practices statute not covered by the
14 Philadelphia Policies. The Court therefore **GRANTS** Fickett's motion for partial
15 summary judgment.
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28

---

[33] Dickinson Decl. ¶ 3.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff Fickett Towers's motion for partial summary judgment (ECF No. 19). Defendant Philadelphia Indemnity Insurance Company's cross-motion for summary judgment (ECF No. 26) is therefore **DENIED**.

**IT IS SO ORDERED.**

September 24, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**